**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Matthew White, | No. CV-22-08113-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Matthew White's appeal from the Social Security Commissioner's denial of disability insurance ("DI") and supplemental security income disability insurance ("SSIDI") benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Doc. 1). The appeal is fully briefed. (Docs. 10; 13; 14).

## I.    BACKGROUND

Plaintiff filed an application for DI and SSI benefits in April of 2020, alleging neck, shoulder, back, and leg pain. (Docs. 9-3 at 28; 9-5 at 2). Plaintiff's application was denied at the initial stage, upon reconsideration, and by an administrative law judge ("ALJ") after a hearing. (Docs. 9-3 at 36, 46, 63, 76; 9-2 at 39). The Social Security Administration ("SSA") Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Doc. 9-2 at 3). Plaintiff then timely filed this action seeking review of the Commissioner's final decision under 42 U.S.C. § 405(g).

### a.  The Disability Determination Process

A claimant qualifies for SSI and DI benefits if, among other things, he is disabled. *See* 42 U.S.C. §§ 423(a)(1), 1382(a). A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(a)(1), 1382c(a)(3)(A). The SSA has created a five-step process for an ALJ to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(1), § 416.920(a)(1). Each step is potentially dispositive. *See id.* §§ 404.1520(a)(4); 416.920(a)(4).

At step one the claimant is not disabled if he is doing substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two the claimant is not disabled if he does not have a "severe impairment," i.e., "any impairment or combination of impairments which significantly limits . . . physical or mental ability to do basic work activities." *Id.* §§ 404.1420(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). At step three the claimant is disabled (and entitled to benefits) if his impairment or combination of impairments "meets the duration requirement" and "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If not, the ALJ will determine the claimant's "residual functional capacity" ("RFC") by considering "all the relevant evidence" including impairments, "any related symptoms," and resulting "physical and mental limitations" to determine "the most [the claimant] can do despite [his] limitations." *Compare id.* § 404.1520(a)(4), *with id.* § 404.1545(a)(1); *and compare id.* § 416.920(a)(4), *with id.* § 416.945(a)(1). At step four the claimant is not disabled if, considering the RFC and the physical and mental demands of the claimant's past relevant work, he can still perform such work. *Id.* §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f). If the claimant cannot perform (or does not have) past work, at step five the claimant is not disabled if, considering his RFC, "age, education, and work experience," he can adjust to other work that exists "in significant numbers in the national economy." *Compare id.* § 404.1520(a)(4)(v), (g)(1), *with id.* § 404.1560(c); *and compare*

*id.* § 416.920(a)(4)(v), (g)(1), *with id.* § 416.960(c). But if the ALJ finds the claimant cannot adjust to other work, he is disabled. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### b. The ALJ's Findings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date.[1] At step two, the ALJ found that Plaintiff's degenerative disc disease with spondylosis was severe. (*Id.*). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.* at 31–32).

The ALJ then found that Plaintiff had the RFC to do light work with postural and environmental limitations. (*Id.* at 32–37). Specifically, the ALJ found that Plaintiff could lift and carry up to 10 pounds frequently and 20 pounds occasionally; stand and walk for four hours and sit for 6 hours in an 8-hour day; not climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; occasionally stoop, crouch, and kneel; frequently balance; and occasionally work with exposure to dangerous moving machinery and unprotected heights. (*Id.* at 32).

At step four, the ALJ found that Plaintiff was unable to do any past relevant work. (*Id.* at 37). At step five, the ALJ found that Plaintiff could adjust to other work that exists in significant numbers in the national economy, based on a vocational expert's ("VE") testimony that a person of Plaintiff's age, education, work experience, and RFC could perform the work of a parking lot cashier, information clerk, and bench assembler. (*Id.* at 38). As a result, the ALJ found Plaintiff not disabled. (*Id.* at 38–39).

## II.   ANALYSIS

Plaintiff argues that the promulgation of the 2017 SSA regulations governing consideration of medical opinion evidence exceeded Defendant's authority under the Social Security Act ("the Act").[2] Plaintiff also argues that the ALJ erred in discrediting

---

[1] (Doc. 9-2 at 31). Plaintiff's alleged onset date was March 23, 2018. (*See, e.g.*, Doc. 9-3 at 5).

[2] (Doc. 10 at 6). Plaintiff also states that promulgating the 2017 regulations exceeded Defendant's authority under the Administrative Procedure Act ("APA") but neither explains this contention nor cites any provision of the APA. (*See* Docs. 10; 14).

1  Plaintiff's subjective symptom testimony and in finding unpersuasive the opinion of

2  Plaintiff's orthopedic surgeon, Dr. Singh. (*Id.* at 12–23). The Court considers each issue in

3  turn.

4      **a. Validity of the 2017 Regulations**

5          The Act grants Defendant "full power and authority to make rules and regulations

6  and to establish procedures, not inconsistent with the provisions of [the subchapters dealing

7  with DI and SSIDI], which are necessary or appropriate to carry out such provisions" and

8  directs her to "adopt reasonable and proper rules and regulations to regulate and provide

9  for the nature and extent of the proofs and evidence and the method of taking and furnishing

10  the same in order to establish the right to" benefits under the Act. 42 U.S.C. § 405(a); *see*

11  *id.* § 1383(d)(1). This "exceptionally broad authority" affords Defendant "wide latitude"

12  to make rules and regulations regarding the evaluation of medical evidence. *Woods v.*

13  *Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022).

14          Because Congress left a gap which it explicitly directed Defendant to fill with

15  regulations, Defendant's evidentiary rules "may be set aside only if they exceed the

16  agency's statutory authority or are arbitrary and capricious."[3] A regulation exceeds the

17  authority granted by an express statutory delegation if it is "manifestly contrary to the

18  statute." *Harner v. Soc. Sec. Admin.*, 38 F.4th 892, 897 (11th Cir. 2022); *see Mead*, 533

19  U.S. at 227. The Act itself "provides no guidance as to how the agency should evaluate

20  medical evidence." *Woods*, 32 F.4th at 790. It does require Defendant "to make findings of

21  fact" and discuss "the evidence . . . and the reason or reasons upon which any unfavorable

22  decision is based," and to consider "objective medical evidence of pain or other symptoms

23  established by medically acceptable clinical or laboratory techniques." *Id.* (cleaned up)

24  (first quoting 42 U.S.C. §§ 405(b)(1), 1383(c)(1)(A), then quoting *id.* § 423(d)(5)(A)). But

25  "[b]eyond that, how to evaluate the evidence is up to the agency." *Id.*

26  _____

27  [3] *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987)); *see also Heckler v. Campbell*, 461 U.S. 458, 466 (1983); *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 843–44 (1984)). Plaintiff

28  does not argue that the challenged regulations are arbitrary and capricious. (*See* Docs. 10; 14).

The relevant SSA regulations in effect between 1991 and 2017 directed ALJs to weigh medical opinion evidence depending on the medical source's relationship to the claimant, with treating sources generally receiving the most evidentiary weight, followed by examining sources and then non-examining sources. *Id.* at 790–91 (citing 20 C.F.R. § 404.1527(c)(1)–(2)). The 2017 regulations "eliminate[d] any semblance" of this "hierarchy of medical opinions," although "the extent of the claimant's relationship with the medical provider . . . remains relevant." *Id.* at 788, 790. Under the 2017 regulations, while ALJs must always consider a source's area of specialty and relationship with the claimant in weighing a medical opinion, ALJs are not required to articulate this consideration in explaining their decision—although they are free to do so, "as appropriate." 20 C.F.R. §§ 404.1520c(b)(2), (c)(3)–(4), 416.920c(b)(2), (c)(3)–(4). Rather, consistency and supportability are now the most important factors in evaluating medical opinions. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

Plaintiff, in arguing that promulgating the 2017 regulations exceeded Defendant's statutory authority, identifies several supposed conflicts between the Act's requirements and certain provisions of the 2017 regulations. (Doc. 10 at 8–12). The Court considers each supposed conflict in turn.

### i.  *Section 421(k)(1)*

Plaintiff first argues that Defendant's regulations are inconsistent with the Act because they create different standards for determining disability at different stages of review. (Doc. 10 at 8). Plaintiff notes that the Act requires Defendant to "establish by regulation uniform standards which shall be applied at all levels of determination, review, and adjudication in determining whether individuals are under disabilities." 42 U.S.C. § 421(k)(1). Plaintiff also notes that 20 C.F.R. § 404.1593(b) requires recipients of disability benefits who have already been judged disabled to provide reports from their "physician, psychologist, or others who have treated or evaluated" such individuals, "as well as any other evidence that will help" Defendant to determine if such individuals "are still disabled." 20 C.F.R. §§ 404.1593(b), 416.993(b). Plaintiff argues that this provision makes

a source's relationship to the claimant a "determinative fact once disability is established" while the priority the 2017 regulations place on supportability and consistency make relationship to the claimant "pre-determined not a determinative fact" during the initial disability determination process. (Doc. 10 at 8).

Plaintiff is wrong on both counts. First, sections 404.1520c and 416.920c do not make relationship with the claimant "pre-determined not a determinative fact." Rather, they direct ALJs to consider a medical source's relationship to the claimant and to articulate their consideration of that factor "as appropriate." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). They also require ALJs to discuss "the other most persuasive factors" (which can include relationship to the claimant) whenever "two or more medical opinions . . . are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3). These provisions therefore do not make relationship with the claimant a predetermined non-determinative fact.

Second, sections 404.1593 and 416.993 do not require Defendant to find a medical opinion more persuasive if it is from a treating source—and indeed do not provide any instructions whatsoever regarding how Defendant should weigh medical evidence. *See* 20 C.F.R. §§ 404.1593, 416.993. Rather, these provisions merely direct benefits recipients to submit certain kinds of evidence for continuing disability review. But the regulations allow recipients to submit evidence other than reports from treating and evaluating sources, and state that Defendant will "consider all evidence [recipients] submit" and will determine continuing disability "on the basis of the weight of the evidence." *Id.* §§ 404.1594(b)(6), 416.994(b)(1)(vi). These provisions therefore do not require Defendant to give controlling weight to reports from treating or examining physicians, and thus do not make relationship with the claimant a necessarily determinative fact after disability has been established.

The Court finds that the above provisions do not conflict with one another or create non-uniform review standards in violation of 42 U.S.C. § 421(k).

## ii.  *Section 421(h)*

Plaintiff next focuses on 42 U.S.C. § 421(h), which directs Defendant to make

"every reasonable effort to ensure" that a "qualified psychiatrist or psychologist" completes an RFC where evidence indicates mental impairment, and that a "qualified physician" completes an RFC where evidence indicates physical impairment. Plaintiff argues that this conflicts with the priority the 2017 regulations place on consistency and supportability over area of specialty. But Plaintiff has again identified a provision that describes which evidence should be evaluated in determining disability, but not how that evidence should be evaluated. The Court finds that sections 404.1520c(b)(2) and 416.920c(b)(2) are not manifestly contrary to section 42 U.S.C. § 421(h).

### iii. *Section 421(j)*

Plaintiff next argues that 42 U.S.C. § 421(j), which directs Defendant to prescribe regulations setting forth the standards and procedures for obtaining a consultative examination of a claimant, conflicts with the priority the 2017 regulations place on consistency and supportability. (Doc. 10 at 9–11). Plaintiff notes that Defendant's regulations implementing this subsection provide that a claimant's treating physician is the preferred source to conduct a consultative examination when that physician "is qualified, equipped, and willing to perform the additional examination or test(s) for the fee schedule payment, and generally furnishes complete and timely reports." 20 C.F.R. § 404.1519h. Plaintiff argues that this shows that the "existence of an examining  or treatment relationship with the claimant are facts which lend greater weight  to a medical source's statement," and that this is inconsistent with the focus of the 2017 regulations on supportability and consistency.

Once again, the provisions Plaintiff identifies set out requirements for what evidence will be considered and how that evidence will be obtained, but are not relevant to how such evidence will be evaluated. Thus, even if these provisions could be construed as implicitly recognizing the probativeness of a medical source's relationship to a claimant, they certainly do not require Defendant to give this factor the same level of importance as consistency and supportability. The Court finds that sections 404.1520c and 416.920c are not manifestly contrary to 42 U.S.C. § 421(j).

1      ### iv. *Section 405(b)(1)*

2              Plaintiff argues lastly that the 2017 regulations are manifestly contrary to 42 U.S.C.

3      § 405(b)(1), which requires Defendant to state "the reason or reasons upon which [an

4      unfavorable disability determination] is based." (Doc. 10 at 7–8, 11–12) (citing 42 U.S.C.

5      § 405(b)); *see also id.* § 1383(c)(1)(A). Plaintiff specifically argues that, because sections

6      404.1520c and 416.920c require ALJs to consider a medical source's area of specialty and

7      relationship to the claimant, but do not require ALJs to explain their consideration of these

8      factors, these sections conflict with the Act's requirement to state the reasons on which an

9      adverse determination is based. The linchpin of Plaintiff's argument is the unexamined

10     assumption that every fact or factor an ALJ considers before reaching a determination is

11     necessarily a "reason upon which" that determination "is based" under § 405(b)(1).

12     Plaintiff provides no explanation and cites no authority in support of this proposition.

13             The Court finds that this proposition is false. The word "reason" is undefined by the

14     Act, *see* 42 U.S.C. §§ 410, 411, 1382c, and must therefore be given its ordinary meaning.

15     *In Re Hawkeye Ent., LLC*, 49 F.4th 1232, 1237 (9th Cir. 2022). "Reason" means "an

16     inducement, motive, or ground for action." Black's Law Dictionary 1138 (5th ed. 1979);

17     *see also* Webster's New Twentieth Century Dictionary 1502 (2d ed. 1975) (defining

18     "reason" as "an explanation or justification of an act, . . . a cause; a motive."); Webster's

19     Third New International Dictionary 1891 (1966) (defining "reason" as a "statement offered

20     as . . . a justification of an act or procedure . . . [;] a consideration, motive, or judgment

21     inducing or confirming a belief, influencing the will, or leading to an action." In other

22     words, a "reason" is a consideration that is a cause for or justification of an action or

23     conclusion. Thus, to comply with § 405(b)(1), an ALJ must discuss only the considerations

24     which caused her decision, and which show it to be justified.

25             This is consistent with the interpretations of several of the circuit courts of appeal,

26     which have generally construed  § 405(b)(1) as requiring not an exhaustive discussion of

27     every probative fact, but only enough reasoning to permit a reviewing court to determine

28     whether the ALJ's decision is supported by substantial evidence. *See, e.g.*,  *Williams v.*

*Colvin*, 524 Fed. App'x 414, 416 (10th Cir. 2013) (citing *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010)); *Peck v. Barnhart*, No. 05–4090, 2006 WL 3775866, at *5 (10th Cir. Dec. 26, 2006); *Brown-Hunter v. Colvin*, 806 F.3d 487, 494–95 (9th Cir. 2015); *Cox v. Comm'r of Soc. Sec.*, 615 Fed. App'x 254, 260–61 (6th Cir. 2015) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014)); *Dykes ex rel. Brymer v. Barnhart*, No. 03–6076, 2004 WL 2297874, at *4 (6th Cir. Oct. 12, 2004) (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014); *Anderson v. Comm'r of Soc. Sec. Admin.*, No. 21-2009, 2022 WL 1635628, at *2 (3d Cir. May 24, 2022).

This interpretation is also reinforced by a review of relevant legislative history. The language at issue was added to § 405(b)(1) by amendment in 1980. *See* Pub. L. No. 96-265, 94 Stat. 457. Before this amendment, there was "no statutory provision setting a specific amount of information to explain the decision." H.R. Rep. No. 96-944, at 58 (1980) (Conf. Rep.). Although the House version of the bill would have required "a citation and discussion of the pertinent law and regulations, a list and summary of the evidence of record, and the secretary's determination and the reason(s) upon which it is based," the conference committee agreed to follow the Senate's version of the bill, which required only "a discussion of the evidence, and the secretary's determination and the reason(s) upon which it is based." *Id.* The conference committee report emphasized that the explanation of the denial should "be brief, informal, and not technical." *Id.*

The Senate Finance Committee report, meanwhile, suggests that the language eventually adopted was selected out of a desire to provide to claimants "guidance as to the causes for a denial" without causing "the denial notification [to] be a voluminous document." S. Rep. No. 84-2, at 56 (1979). The report noted that the then-current practice of issuing a "brief form letter" notifying a claimant of a denial did not provide "enough of the particulars of his case to provide assurance that his case ha[d] been decided fairly." *Id.* The report reasoned that requiring a discussion of "the reasons why the disability claim is

denied" could both put the non-disability determination "on a sounder base" and give the claimant an understanding of "how the law relates to his particular case," making him "less likely to appeal the decision." *Id.* Thus, the legislative history of the 1980 amendment suggests that Congress intended ALJs, in explaining a denial of benefits, to include only enough detail to communicate the causes of a denial and persuade a claimant that the determination was correct, without necessarily discussing every piece of evidence.

The Court finds that 42 U.S.C. § 405(b)(1) requires an ALJ to discuss only those considerations which caused the determination, with enough detail to allow the claimant and the reviewing court to determine whether the ALJ reasonably and correctly applied the law to the facts of each case. To the extent an ALJ's decision is really caused by her consideration of a medical source's area of specialty or relationship to a claimant, that ALJ is free under the 2017 regulations to discuss those factors in explaining her decision. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2) (providing that an ALJ "may" explain her consideration of those factors "as appropriate."). Thus, there is no manifest conflict between the Act and the 2017 regulations, and the inquiry into whether an ALJ's decision complies with 42 U.S.C. § 405(b)(1) will typically been subsumed into the broader analysis of whether the decision was free of legal error and supported by substantial evidence.

The Court therefore proceeds to that broader inquiry.

### b. The ALJ's Adverse Disability Determination

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d

1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). But by the same token the Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

Plaintiff argues the ALJ erred both in partly discrediting Plaintiff's testimony regarding the severity of his symptoms and in finding unpersuasive the medical opinion of Plaintiff's orthopedic surgeon. The Court takes each issue in turn.

### i. *Subjective Symptom Testimony*

Plaintiff argues that the ALJ did not provide legally sufficient reasons supported by substantial evidence for partly discrediting Plaintiff's subjective symptom testimony. (Docs. 10 at 12–17; 14 at 4–7). To discredit subjective symptom testimony an ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036–37 (9th Cir. 2007) (cleaned up). Once a Plaintiff satisfies this test, provided there is "no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (cleaned up).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, and did not make a finding that he was malingering. (Doc. 9-2 at 33). But the ALJ concluded that Plaintiff's statements regarding the severity of his symptoms were inconsistent with evidence in the record. Because the ALJ did not make a finding that Plaintiff was malingering, the Court must determine whether the ALJ gave specific, clear, and convincing reasons for partly discrediting Plaintiff's symptom testimony.

An adverse credibility determination is sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). The "clear and convincing" requirement is satisfied where the "ALJ's rationale is clear enough that it has the power to convince." *See Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

In assessing credibility an ALJ may consider, among other factors, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at 1163 (citations omitted). Additionally, when "objective medical evidence in the record is *inconsistent* with the claimant's testimony, the ALJ may . . . weigh it as undercutting such testimony." *Smartt*, 54 F.4th at 498 (emphasis in original). Where "the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record," the Court must defer to the ALJ's determination. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Plaintiff testified at the hearing that he had daily pain in his neck, shoulders, arms, back, buttocks, legs, feet, and toes that he rated at a severity of 8 or 9 out of 10, with 10 meaning "you need to go to the hospital." (Doc. 9-2 at 61). He testified that this pain: prevented him from sitting for more than one hour and standing or walking for more than one hour in an eight-hour day; prevented him from lifting more than ten pounds; prevented him from driving more than one mile per day; and required him to take numerous breaks to stretch and lie down. (*Id.* at 51, 58, 61–62).

The ALJ gave a number of reasons for partly discrediting Plaintiff's symptom testimony, each of which Plaintiff argues was erroneous. The Court considers each set of reasons in turn.

1. *Inconsistencies with the Medical Evidence*

The principal reason the ALJ gave for rejecting some of Plaintiff's symptom

testimony was inconsistency between that testimony and medical evidence in the record. (*Id.* at 33–34).[4] For example, the ALJ noted that Plaintiff's medical providers repeatedly observed that Plaintiff was not in any distress, which contradicted Plaintiff's reports of debilitating pain. (*Id.* at 33 (citing Docs. 9-7 at 4, 7–15, 25, 30, 44, 49, 57, 62)). The ALJ also noted the consultative examiner's finding that Plaintiff had a "medium frame and athletic muscular build," which the ALJ reasoned "suggests he is capable of and engages in greater levels of physical activity tha[n] alleged." (*Id.* at 34 (citing Doc. 9-7 at 7–8)). These are legally permissible reasons to discount claims of chronic pain. *See De Mello v. Kijakazi*, 2022 WL 17583054, at *1 (9th Cir. 2022); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (stating that being "well-developed," "well nourished," and "in no acute distress" is "not the sort of description . . . one would expect" of a plaintiff who "was totally disabled.").

Plaintiff argues that some of the cited reports contain no relevant observations, and that the ALJ's interpretation of the other cited reports was unreasonable. (Doc. 10 at 13–14). Specifically, Plaintiff argues that one report contains no observation of distress or otherwise, and is irrelevant because it describes a visit which occurred eight days before Plaintiff's alleged disability onset. (Doc. 10 at 14 (citing Doc. 9-7 at 4)). But that report does contain the note "Thin, WD, WN man in NAD." (*See* Doc. 9-7 at 4). The ALJ's evident interpretation of this note to mean "Thin, well-developed, well-nourished man in no apparent distress" was reasonable. The visit at which this note was made addressed the same symptoms which would cause Plaintiff's alleged disability only eight days later, and the note is therefore relevant to his credibility regarding those symptoms. *Cf. Lacy v. Comm'r of Soc. Sec. Admin.*, No. CV-21-01908-PHX-JAT, 2023 WL 2624459, at *4 (D. Ariz. Mar. 24, 2023).

---

[4] Plaintiff argues that there is no basis for the ALJ's characterization of Plaintiff as having stated "he is extremely limited due to pain," or else argues that this description is not sufficiently specific to identify the testimony the ALJ discredited. (Doc. 10 at 13; 14 at 6). The Court has no trouble discerning from the ALJ's description that she discredited Plaintiff's hearing testimony regarding pain and pain-induced limitations, as well as other such subjective complaints in the record. Additionally, given Plaintiff's symptom testimony at the hearing as discussed above, the Court finds that the ALJ's characterization of Plaintiff's testimony as alleging extreme limitations is reasonable.

Plaintiff concedes that most of the other cited reports do contain observations of "no apparent distress," or similar, but argues that because some tests in those same reports were positive for pain, the ALJ's inference that Plaintiff has less pain than he alleges was unreasonable. Plaintiff essentially argues that this set of observations could be adequately explained by inferring that Plaintiff conceals his chronic pain except when he is being medically tested for it. But this is merely an alternative interpretation of the evidence. Because the ALJ's interpretation was reasonable, the Court defers to it.[5]

The ALJ also noted that physical exams mostly showed normal gait as well as normal strength in Plaintiff's limbs, and that electrodiagnostic studies of Plaintiff's legs had normal findings, which she reasoned was inconsistent with Plaintiff's alleged standing and walking limitations, as well as with the alleged weakness and numbness in his limbs. This finding is reasonable and supported by substantial evidence.

Plaintiff asserts that the ALJ does not cite a medical interpretation of the EMG test, but this assertion is incorrect. (*See* Doc. 9-2 at 34 (citing 9-7 at 31, 73–75) (respectively, the medical interpretation of an EMG test as normal, and the test results)). Plaintiff also argues that this normal test result is not inconsistent with Plaintiff's symptom testimony because the ALJ used the word "inability" to describe Plaintiff's standing and walking limitations, when actually Plaintiff was able to walk or stand for one hour. But it is evident that the ALJ used "inability" as shorthand to refer to Plaintiff's previously discussed standing and walking limitations, not to state a belief that Plaintiff could not stand or walk at all. *See* (Doc. 9-2 at 36) ("[T]he claimant could not sustain sedentary work based on the inability to sit, stand and/or walk for an hour per 8-hour day.").

Another reason the ALJ gave for discounting Plaintiff's symptom testimony was an instance in which Plaintiff reported pain that sometimes radiated down his right leg, but in which the examining physician noted that Plaintiff "has some radiation but it doesn't appear to be radicular." (Doc. 9-2 at 34 (citing Doc. 9-7 at 3–4)). Plaintiff argues that the

---

[5] While the ALJ's citation to the consultative exam, (Doc. 9-7 at 7–15), which does not note whether or not Plaintiff was in apparent distress, neither supports nor detracts from the ALJ's finding, substantial evidence nonetheless supports that finding given the other supporting citations.

physician's statement is not inconsistent with the claimed severity of his symptoms because it could be interpreted to mean that Plaintiff had radiating pain but not radicular pain. (Doc. 10 at 15). While this interpretation would be reasonable, the ALJ's interpretation of the statement (as suggesting that Plaintiff did not have radicular pain and therefore had less pain than he had reported) is also reasonable. Where the evidence admits of more than one rational interpretation this Court must uphold the ALJ's findings.

Plaintiff argues that some of the test results the ALJ cited appear to support Plaintiff's claim that he has some limitations. (Doc. 10 at 14). This is true enough. (*See* Doc. 9-2 at 34 (citing Doc. 9-7 at 6, 80) (imaging results showing bone spurs and "minimal degenerative changes" in the lumbar spine)). But the ALJ cited these test results in support of the proposition that "positive diagnostic findings fail to corroborate the *full* extent of the alleged severity . . . of the claimant's medical conditions." (*See id.*) (emphasis added). The ALJ then discussed these results together with a number of results which contradicted Plaintiff's claims, eventually concluding that Plaintiff had some limitations but was not disabled. (*See* Doc 9-2 at 34, 37, 39). The ALJ's citation of test results which support Plaintiff's claims that he has some limitations was therefore not erroneous.[6]

The Court finds that these inconsistencies with the medical evidence are clear and convincing reasons supporting the ALJ's negative credibility determination.

### 2. *Inconsistent Statements*

The ALJ noted that Plaintiff made several inconsistent statements regarding his symptoms. (Doc. 9-2 at 34). The ALJ found that Plaintiff's reports regarding numbness, tingling, and radiating pain were inconsistent with both his denial at a March 2018 medical appointment of any numbness and tingling, and his statement at the same appointment that he only had radiating pain "sometimes." (Doc. 9-2 at 34 (referring to Doc. 9-7 at 3)). The

---

[6] Additionally, to the extent Plaintiff argues the ALJs consideration of objective medical evidence to assess Plaintiff's testimony regarding symptom severity was per se erroneous, this is incorrect. *See, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529c(2)) ("While subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (emphasis added).

ALJ also found that Plaintiff's denial, at the July 2018 consultative exam, of radiating pain, tingling, and numbness in his lower extremities was inconsistent with other instances when he claimed to have these symptoms. (*Id.* (citing Doc. 9-7 at 7)). The Court finds that this is a clear and convincing reason supported by substantial evidence for discounting Plaintiff's subjective symptom testimony.

### 3.  *Daily Activities*

The ALJ also partly discredited Plaintiff's testimony because she found his daily activities were inconsistent with his alleged degree of limitation. (Doc. 9–2 at 34–35). Daily activities are a proper basis supporting an adverse credibility determination where they "are incompatible with the severity of symptoms alleged" or where "a claimant is able to spend a substantial part of [her] day engaging in pursuits involving the performance of physical functions that are transferable to a work setting." *Ghanim*, 763 F.3d at 1165 (citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004)).[7] The ALJ noted that Plaintiff: worked in his mother's laundromat for one to two hours per day, which involved dusting and mopping; was independent in self-care; prepared his own meals; could drive a car; and reported doing cardiovascular exercise. (Doc. 9-2 at 34–35).

The Court finds reasonable the ALJ's conclusion that these activities were inconsistent with Plaintiff's alleged symptom severity. Most prominently, his statements that he does cardiovascular exercise and regularly does part-time work are inconsistent with his claim that "[t]hroughout the day" he is in pain that is nearly severe enough to require treatment at a hospital. (*See* Doc. 9-2 at 61). Further, it appears unlikely that Plaintiff would be able to accomplish all of the above tasks independently if he can only stand and walk for one hour in an eight-hour day.

The ALJ also reasoned, from Plaintiff's statement that he was a "[s]tay at home dad," that Plaintiff could work but chooses not to. (Doc. 9-2 at 35 (citing Doc. 9-7 at 29)).

---

[7] Plaintiff argues that to discount Plaintiff's symptom testimony because of daily activities, those daily activities must be directly transferable to a work setting. (*See* Doc. 10 at 16). This is incorrect. *See Ghanim*, 763 F.3d at 1165; *Rollins*, 261 F.3d at 856; *Valentine v. Comm'r Soc. Sec. Admin*, 574 F.3d 685, 693 (9th Cir. 2009).

Plaintiff argues that this inference is unreasonable, and that having children is not evidence of functionality. (Docs. 10 at 17; 14 at 7). But being a stay-at-home parent is commonly understood to involve caring for children, which requires some capacity to perform the tasks incidental to childcare. *See, e.g.*, *Rollins*, 261 F.3d at 857. Further, the ALJ's interpretation is bolstered by the fact that Plaintiff said he was a stay-at-home dad in response to being asked about his employment status—which could suggest that, for Plaintiff, being a stay-at-home dad involves tasks at least somewhat comparable to those required for gainful employment. (Doc. 9-7 at 29). Because Plaintiff would have to perform the childcare tasks of a stay-at-home dad in addition to the tasks listed above, it was reasonable for the ALJ to conclude that, along with Plaintiff's other activities, Plaintiff's statement that he was a stay-at-home dad was inconsistent with his alleged symptom severity. The Court finds that this inconsistency is a clear and convincing reason supported by substantial evidence for discounting Plaintiff's subjective symptom testimony.

### 4.  *Failure to Comply with Treatment*

The ALJ also party discredited Plaintiff's testimony because he failed to complete his prescribed course of physical therapy visits, reasoning that he did not need physical therapy services because his overall condition was improving with home exercise. (Doc. 9-2 at 35). Social Security Ruling ("SSR") 16-3p provides that an ALJ may not "find an individual's symptoms inconsistent with the evidence in the record" because of "fail[ure] to follow prescribed treatment" without "considering possible reasons" for the failure, including inability to afford treatment. SSR 16-3p, 2017 WL 5180304, at *9–10.

The ALJ's summary of Plaintiff's course of physical therapy treatment suggests that Plaintiff initially failed to begin physical therapy after his December 2019 surgery because his insurance would not cover the services, but that he later did begin treatment before stopping for some different, unexplained reason. (*See* Doc. 9-2 at 35). But there are only two physical therapy treatment records dated after Plaintiff's surgery: an initial one at the end of January 2020, and a second one on February 17 stating that Plaintiff had not shown up for three consecutive visits and would be discharged as a result. (Doc. 9-7 at 26, 29).

Moreover, at the hearing, when the ALJ cited the February 17 treatment record to Plaintiff and asked him to explain it, Plaintiff stated that he had stopped attending because his insurance would not pay for additional visits. (Doc. 9-2 at 54–55). Thus, the ALJ's interpretation of Plaintiff's reasons for not completing his prescribed course of physical therapy is not supported by substantial evidence.

Nonetheless, the Court finds that this error is harmless because the ALJ gave other clear and convincing reasons for partly rejecting Plaintiff's subjective symptom testimony, and the ALJ's ultimate credibility determination is adequately supported by substantial evidence in the record. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008).

**ii.  *Medical Opinion***

Plaintiff next argues that the ALJ erred in finding unpersuasive the opinion of Plaintiff's orthopedic surgeon, Dr. Singh. For applications (like Plaintiff's) filed on or after March 27, 2017, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. In providing this explanation, the ALJ must articulate how she considered the supportability of that medical opinion and its consistency with other evidence in the record. *See id.* (citing 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920(b)(2), (c)(1)–(2)).

Dr. Singh opined that Plaintiff: was unable to sit for more than one hour, or stand or walk for more than one hour, in an eight hour day; had constant severe pain in the lower back, intermittent moderate pain in the lumbar spine, and moderate numbness in the legs and feet; had to walk once every 10 minutes for three minutes and take 5–10 minute breaks to rest every two hours; had to elevate his legs 20% of the time; would miss three days of work per month; and could only lift 10 pounds occasionally and less than 10 pounds frequently. (Doc. 9-8 at 2–5).

The ALJ found Dr. Singh's opinion unpersuasive because it was inconsistent with the medical evidence in the record, and appeared "instead to be an endorsement of the

claimant's unreliable subjective complaints."  (Doc. 9-2 at 36). An ALJ may reject a medical opinion to the extent it is based on subjective complaints of pain which have been properly discounted. *Fair*, 885 F.2d at 605. Plaintiff argues that Dr. Singh's opinion was not based on Plaintiff's subjective complaints, but Dr. Singh answered "yes" to a question asking whether "the patient report[s] that flare-ups impact the function of the . . .[l]umbar spine." (Doc. 9-8 at 2). Thus, Dr. Singh's opinion was based at least in part on Plaintiff's subjective complaints which, as discussed, the ALJ properly discounted. Further, Dr. Keer, whose opinion the ALJ found mostly persuasive, opined that Dr. Singh's opinion "relie[d] heavily on the subjective report of symptoms and limitations provided by [Plaintiff]." (Doc. 9-3 at 61). Thus, although the form did direct Dr. Singh to answer the questions based on his judgment, examination, and treatment of the Plaintiff, (Doc. 9-8 at 2), there was a least an ambiguity in the medical evidence which the ALJ was entitled to resolve. The ALJ's resolution of that ambiguity was reasonable, and the Court defers to it. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that a medical consultant's statement that a medical opinion was based on subjective complaints supported the ALJ's rejection of that opinion).

The ALJ also found Dr. Singh's opinion less persuasive because it was a check-box form that did not "fully explain the claimant's leg limitations or purported need to elevate the legs." (Doc. 9-2 at 36). While a check-box form is not necessarily "any less reliable than any other type of form," *Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017), the "regulations give more weight to opinions that are explained than to those that are not." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing the supportability factor of 20 C.F.R. § 404.1527); *see also* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the . . . supporting explanations are to support . . . medical opinion(s) . . . the more persuasive medical opinion(s) . . . will be."). Dr. Singh, upon being instructed to identify "the particular medical signs, laboratory findings, or other factors" that supported his assessment, explained his opinion by summarizing Plaintiff's case history:

> Patient is status post B/L L4–5 Decompression that took place on 12/16/19. Since surgery patient still continues to have bilateral leg pain. He continues

1
2

to numbness, tingling and weakness in bilateral legs and feet. Before, surgery
was done patient had Injections done that did not help as well as an MRI was
completed. I have ordered a new MRI since surgery.

3

4

(Doc. 9-8 at 5–6). The ALJ's finding that this did not fully explain Plaintiff's leg

5

limitations and need for leg elevation was reasonable, as the explanation primarily

6

reiterates Plaintiff's symptoms without discussing the need for elevation, without

7

spelling out the specific mechanism of Plaintiff's leg numbness and weakness, and

8

without detailing the tests used to assess Plaintiff's reported pain.[8] The Court finds

that substantial evidence supports this reason for rejecting Dr. Singh's opinion.[9]

9

The ALJ also found that the limitations in Dr. Singh's opinion were inconsistent

10

with one another. (Doc. 9-2 at 36). Although Dr. Singh opined that Plaintiff had

11

"significant limitations in doing repetitive reaching, handling, or fingering," he also opined

12

that Plaintiff could do the "repetitive activities" of grasping, turning, and twisting objects

13

with the hands, fine manipulating with the fingers, and reaching with the arms, 100% of

14

the time during an 8-hour work day. (Doc. 9-8 at 5). Substantial evidence supports the

15

ALJ's finding that these opinions were inconsistent, as a significant limitation in these

16

activities should translate to an inability to do these activities at least some of the time.

17

Similarly, the ALJ found Dr. Singh's opinion that Plaintiff needed "to take a break

18

every two hours" inconsistent with Dr. Singh's opinion that Plaintiff could only

19

"sit/stand/walk for an hour at a time." (Doc. 9-2 at 36). Plaintiff argues that the ALJ was

20

not permitted to consider the internal inconsistency of Dr. Singh's opinion because ALJs

21

are only permitted to consider consistency between, rather than within, medical opinions.

22

(Doc. 10 at 22). This is incorrect, as ALJs may consider any "factors that tend to support

23

or contradict a medical opinion." 20 C.F.R. § 404.1520c(c)(5).

24

25

26

27

28

---

[8] Additionally, the fact that Dr. Singh mostly repeated Plaintiff's symptoms when asked to
provide medical signs and laboratory findings to explain them further supports the ALJ's
finding that Dr. Singh's opinion was largely an endorsement of Plaintiff's subjective
symptom testimony.
[9] To the extent the ALJ erred by suggesting that a check-box form is inherently less
"objective" than other types of opinions, the Court finds any such error harmless because
the ALJ also gave a permissible reason supported by substantial evidence for rejecting the
check-box form.

Plaintiff also argues that the ALJ mischaracterized Dr. Singh's opinion, and that, properly understood, these limitations are not inconsistent. (Doc. 10 at 22 (discussing Doc. 9-8 at 4)). Specifically, Plaintiff reads Dr. Singh's opinion as stating that Plaintiff could walk for one hour, stand for one hour, and sit for one hour (for a total of three hours combined walking, standing, and sitting), which Plaintiff argues is consistent with Dr. Singh's opinion that Plaintiff would need to take a five-to-ten minute break "every 2 hrs. or less." But because the check-box form Dr. Singh used is ambiguous on this point, the Court cannot say with certainty whether Dr. Singh meant to opine that Plaintiff could sit, stand, and walk for a total of one, two, or three hours per day. (*See* Doc. 9-8 at 4). If the ALJ's plausible interpretation that plaintiff could only "sit/stand/walk for an hour at a time" is correct, these limitations would be inconsistent because a person who can only sit, stand, and walk for one hour total would need to take a break every one hour or less, not every two hours or less. The Court therefore finds that the ALJ's interpretation of Dr. Singh's opinion as internally inconsistent was reasonable.[10] Alternatively, any error was harmless because the ALJ gave other permissible reasons for finding Dr. Singh's opinion unpersuasive. *See Carmickle*, 533 F.3d at 1162–63.

Plaintiff additionally argues that the ALJ erred by stating that Dr. Singh's opinion that Plaintiff was "not able to work" was an issue reserved to Defendant. (Docs. 10 at 19–20; 14 at 4). Plaintiff argues that the ALJ's inaccurate citation to Dr. Singh's opinion (which did not contain this quotation) rather than to Dr. Singh's February 26, 2020 treatment note (which did) is "a determinative error." (Doc. 14 at 4 (citing Docs. 9-7 at 84; 9-8 at 2-6)).

But under the SSA regulations, statements on issues reserved to the Commissioner are assigned no value or persuasiveness, and consideration of such statements is not explained. 20 C.F.R. § 404.1520b(c); *see also Callahan v. Kijakazi*, 2023 WL 2166989, at

---

[10] Plaintiff's argument that Dr. Singh's limitations are really consistent because Plaintiff could lie down while working is not persuasive. It was reasonable for the ALJ to presume that lying down was equivalent to taking a break from work, as lying down frequently is inconsistent with the requirements of most occupations. *See, e.g., Voelker v. Kijakazi*, 2023 WL 3062111, at *3 (E.D. Cal. Apr. 24, 2023); *Lingenfelter*, 504 F.3d at 1035.

*8 (E.D. Cal. Feb. 22, 2023). Essentially, such statements are simply treated as if they are not there and are given no weight. See *Isbell v. Soc. Sec. Admin., Comm'r*, No. 22-10938, 2023 WL 2606614, at *1 (11th Cir. 2023); *Rogers v. Kijakazi*, 62 F.4th 872, 878–79 (4th Cir. 2023); *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *2 (5th Cir. 2023); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5851 (Jan. 18, 2017) ("When we receive a document from a medical source that contains multiple categories of evidence, we will consider each kind of evidence according to its applicable rules. We will not consider an entire document to be a statement on an issue to the Commissioner simply because the document contains a statement on an issue that is reserved to the Commissioner."). The statement that Plaintiff was "not able to work" was not contained in Dr. Singh's opinion, and the ALJ gave it no weight one way or the other by classifying it as a statement on an issue reserved to Defendant. Plaintiff does not explain how treating a statement that really was not there as if it were not there could have affected the ALJ's non-disability determination. This was, at most, harmless error.

The Court concludes that the ALJ gave sufficient and legally permissible reasons supported by substantial evidence for finding Dr. Singh's opinion unpersuasive.

## III.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Commissioner's decision is affirmed, and the Clerk of the Court shall enter judgment accordingly. To the extent a mandate is required, the judgment shall serve as the mandate.

Dated this 31st day of July, 2023.

James A. Teilborg
Senior United States District Judge